## IN THE UNTIED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **THE JOB CENTER, LLC** | ) CASE NO._____ |
| | ) |
| *Plaintiff*, | ) JUDGE_____ |
| | ) |
| v. | ) |
| | ) **(Jury Trial Endorsed Hereon)** |
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## COMPLAINT

Now comes the Plaintiff, The Job Center, LLC ("Plaintiff"), by and through undersigned counsel, and for its Complaint against the Defendant, the United States of America ("Defendant"), for a refund of amounts paid to the Internal Revenue Service ("IRS") under 26 U.S.C § 7422, plus interest thereupon according to law, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an Ohio limited liability company with its principal place of business in Cincinnati, Ohio.

2. Defendant the United States of America may be served with process by mailing a copy of the Summons and Complaint by certified mail to Kenneth L. Parker, United States Attorney for the Southern District of Ohio, 303 Marconi Boulevard, Suite 200, Columbus, OH 43215, and by mailing a copy of the Summons and Complaint by certified mail to Merrick Garland, Attorney General of the United States, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(2).

## PAYROLL TAXES AND THE ERC

5. Pursuant to Federal law, employers are required to withhold certain Federal income taxes, and taxes from the Federal Insurance Contributions Act ("FICA Taxes"), from their employees' wages and other compensation.

6. Pursuant to 26 U.S.C. §§ 3102, 3111, 3301 and 3402, employers are also required to pay their own portion of FICA Taxes and taxes from the Federal Unemployment Tax Act ("FUTA Taxes"), with FICA Taxes and FUTA Taxes being commonly referred to, collectively, as "Payroll Taxes."

7. Pursuant to 26 U.S.C. §§ 6302 and 6157, as well as 26 C.F.R. §§ 31.6302-1, 31.6302(c)-1, and 31.6302(c)-3, employers are required to periodically deposit Payroll Tax payments in certain prescribed Federal deposit banks.

8. Pursuant to 26 U.S.C. § 6011, as well as 26 C.F.R. § 31.6071(a)-1, employers are further required to file quarterly Payroll Tax returns (known as "IRS Form 941").

9. On or about March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (Pub. L. No. 116-36, "CARES Act"), which created a new refundable credit program commonly known as the Employee Retention Credit ("ERC"). Congress amended the ERC program several times, including by way of the Taxpayer Certainty and Disaster Relief Act of 2020 (Pub. L. 116-260), the American Rescue Plan Act of 2021 (Pub. L. 117-2), and the Infrastructure Investment and Jobs Act (Pub. L. 116-136).

10. As amended, the ERC was available to businesses for all four (4) calendar quarters of 2020 (the "2020 ERC"), and (with limited exception, not applicable to this case) the first three (3) calendar quarters of 2021 (the "2021 ERC").

11. Businesses could qualify for the ERC in a given calendar quarter of 2020 and/or 2021 by showing either: (a) a decline in gross receipts over a given statutory threshold, compared to the corresponding quarter in 2019 (the "Gross Receipts Test"), or (b) a full or partial suspension of their business due to compliance with State, Local or Federal government-issued orders limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to COVID-19 (the "Government Shutdown Test").

12. For the 2020 ERC, the amount of the ERC was fifty percent (50%) of qualifying wages, with qualifying wages being capped at $10,000.00 annually per employee. Applying these rules, the maximum per employee credit was $5,000.00 in the aggregate for all quarters in which the employer was eligible for the 2020 ERC. For the 2021 ERC, the amount of the credit was seventy percent (70%) of qualifying wages, with qualifying wages being capped at $10,000.00 quarterly per employee. Applying these rules, the maximum per employee credit was $7,000.00 for each quarter in which the employer was eligible for the 2021 ERC.

13. For both the 2020 ERC and 2021 ERC, qualifying wages included W-2 wages, plus employer-paid healthcare expense. Certain amounts were statutorily required to be excluded from qualifying wages, including payroll costs used for forgiveness of a Paycheck Protection Program Loan, and certain credits such as the Work Opportunity Tax Credit and leave credits under the Families First Coronavirus Response Act.

## PLAINTIFF'S ERC CLAIMS

14. Plaintiff is a staffing company specializing in leasing employees to businesses in light industrial industries such as warehousing and distribution. Plaintiff has locations throughout Ohio, Kentucky, Indiana, Pennsylvania, New Hampshire, Missouri, Georgia, North Carolina, Texas, and Arizona.

15. During the COVID-19 pandemic, Plaintiff was compelled to suspend and/or modify a more than nominal portion of its business due to compliance with State, Local or Federal government-issued orders limiting commerce, travel, or group meetings, including (but not limited to) substantially increasing processing and check-in times for employees due to mandated social distancing, temperature checks and sanitation, being unable to meet with prospective employees due to social distancing and indoor occupancy restrictions, eliminating walk-in appointments for new employees and switching to an appointment-only model, and eliminating job fairs and group hiring events.

16. As a result of the conditions described above, Plaintiff qualified for the ERC under the Government Shutdown Test for the second calendar quarter of 2020 ("Q2 2020"), the third calendar quarter of 2020 ("Q3 2020"), the fourth calendar quarter of 2020 ("Q4 2020"), the first calendar quarter of 2021 ("Q1 2021") and the second calendar quarter of 2021 ("Q2 2021").

17. On or about June 20, 2023, Plaintiff filed Forms 941-X with the IRS for Q2 2020, Q3 2020, Q4 2020, Q1 2021, and Q2 2021, claiming ERC refunds in the amounts of $742,391.47, $806,080.19, $1,342,305.71, $903,686.20, and $1,359,945.28, respectively (each an "ERC Refund Claim," and collectively, the "ERC Refund Claims").

18. As of the date of this filing, the IRS has failed to issue Plaintiff any refunds for the ERC Refund Claims.

19. Defendant has not issued any notices of audit, examination, disallowance, or deficiency for the time periods applicable to the ERC Refund Claims which would justify any further delays in issuing the requested refunds.

20. Defendant has made no claim upon the Plaintiff regarding any Federal taxes alleged to be owed by Plaintiff that could be properly offset by the refunds owed to Plaintiff pursuant to the ERC Refund Claims.

## CAUSE OF ACTION

21. A taxpayer is permitted to file a refund suit against the United States of America, pursuant to 26 U.S.C. § 7422 and 6532, for the recovery of taxes paid under Title 26 of the United States Code, provided that (a) a claim for refund has been filed with the IRS, (b) it has been at least six (6) months from the date of such filing, and (c) it has been less than two (2) years from the date the IRS notified the taxpayer that such claim has been disallowed.

22. As set forth in Paragraph 17, above, Plaintiff filed for the ERC Refund Claims on or about June 20, 2023.

23. Defendant has failed to issue any of the refunds for any ERC Refund Claim.

24. It has been longer than six (6) months since Plaintiff filed the ERC Refund Claims.

25. Defendant never disallowed any of the ERC Refund Claims, and the two (2) year statute of limitations based on a disallowance is thus inapplicable.

26. Plaintiff is entitled to the ERC Refund Claims, in the following amounts, plus interest in accordance with the law: $742,391.47 for Q2 2020, $806,080.19 for Q3 2020, $1,342,305.71 for Q4 2020, $903,686.20 for Q1 2021, and $1,359,945.28 for Q2 2021.

27. Plaintiff is entitled to reasonable attorney's fees and legal costs associated with this cause of action, pursuant to 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(I)     An Order from this Court ordering Defendant to pay Plaintiff the sum of $742,391.47 for its Q2 2020 ERC Refund Claim, with interest thereupon; and

(II)    An Order from this Court ordering Defendant to pay Plaintiff the sum of $806,080.19 for its Q3 2020 ERC Refund Claim, with interest thereupon; and

(III)   An Order from this Court ordering Defendant to pay Plaintiff the sum of $1,342,305.71 for its Q4 2022 ERC Refund Claim, with interest thereupon; and

(IV)    An Order from this Court ordering Defendant to pay Plaintiff the sum of $903,686.20 for its Q1 2021 ERC Refund Claim, with interest thereupon; and

(V)     An Order from this Court ordering Defendant to pay Plaintiff the sum of $1,359,945.28 for its Q2 2021 ERC Refund Claim, with interest thereupon; and

(VI)    An award of reasonable attorney's fees and legal costs permissible under 28 U.S.C. § 2412; and

(VII)   Any further monetary or equitable relief this Court deems fair and just.

Respectfully submitted,
CORSARO & ASSOCIATES CO., LPA

By: /s/ Christian M. Bates
Steven B. Beranek, Esq. (#0066847)
Christian M. Bates, Esq. (#0079761)
Joseph G. Corsaro, Esq. (#0011474)
28039 Clemens Rd.
Westlake, OH   44145
Ph: (440) 871-4022
Fax: (440) 871-9567
cbates@corsarolaw.com
jgcorsaro@corsarolaw.com
sberanek@corsarolaw.com
*Attorneys for Plaintiff The Job Center, LLC*

## **JURY DEMAND**

Plaintiff requests a jury trial for all issues triable by a jury pursuant to Federal Rule of Civil Procedure 38(b).

By: /s/  Steven B. Beranek
Steven B. Beranek, Esq.
Attorney for Plaintiff

V:\@@LITIGATION\Job Center vs. USA\Draft Complaint - Job Center.docx